## CLARK v. RAILROAD.

(Filed April 4. 1905).

### *Sales—Evidence—Agreement of Third Person—Novation*

1. In an action to recover from the defendant on a promise to pay for cross-ties sold by the plaintiff to S. evidence that the Trustee in Bankruptcy of S. claimed the money and forbade the payment of it to the plaintiff, was incompetent.

2. It is not competent to ask a witness as to his purpose in writing a letter. Its construction is for the court and his purpose is immaterial.

3. Where certain ties were shipped to the defendant, pursuant to an agreement between the buyer and the plaintiff; that the plaintiff was to have the possession and control of them until the purchase price was paid by the defendant that the defendant was notified of this agreement before receiving the ties and assented thereto; *held,* the plaintiff was entitled to recover of the defendant the amount due on said ties.

4. Where a debtor and his creditor enter into an agreement by which a third person is to pay the debt to the creditor, and the debtor is released and the third person agrees to this, there is a novation and the creditor may sue the third person.

ACTION by O. L. Clark against the Deleware, Lacka-wanna and Western Railroad, heard by *Judge Fred Moore* and a jury, at the October Term, 1904, of the Superior Court of NEW HANOVER County.

From a judgment for the plaintiff, the defendant appealed.

*John D. Bellamy* and *Geo. Rountree* for the plaintiff.
*Jno. D. Shaw, Jr.,* for the defendant.

CONNOR, J. The plaintiff alleged and introduced testimony tending to show that prior to Nov. 1, 1903, he was the owner and had in his possession about 20,000 cross ties. That the manager of the Standard Pole & Tie Co., proposed to buy them to be shipped to defendant—bill of lading to be in plaintiff's name. Plaintiff agreed to sell provided they were shipped in his name and the defendant would become responsible to him for them. That he was not willing to trust the Standard Pole & Tie Co. That he ordered cars and began to ship them to Wilmington to his, plaintiff's order. Ties were to be put in vessel and carried as plaintiff's property to defendant at Hoboken, N. J. Plaintiff had this understanding with the manager of Standard Pole & Tie Co. Plaintiff was to have check for amount due on the ties when they reached defendant, when he was to release them. Plaintiff introduced letter from himself to Geo. F. Wilson, purchasing agent of defendant, bearing date February 25, 1904, stating in substance that when the Standard Pole & Tie Co. shipped cargo that they gave him a mortgage on 19,000 of them for balance due, stating amount saying: "The ties were not released, but put in with theirs and would be released on payment of $3,447 to me when cargo was discharged. Please hold back payment of cargo till they give you order to pay my claim. These people wrote me that they had notified you but for fear they have not will ask you myself to put in voucher for $3447,

CLARK *v.* RAILROAD.

which will release everything and leave balance due Standard Pole & Tie Co." He enclosed stamp for reply asking Wilson to notify him. The plaintiff received from Wilson answer to letter of February 25th, and saying "I beg to advise you that I am authorized by Standard Pole & Tie Co. to remit to you on account of shipment made by them the sum of $3468.47. I have had no advice of the shipment you referred to. However, on arrival of shipment after inspection is made, remittance will be made to you as directed."

The plaintiff testified that defendant had not paid for the ties. Plaintiff introduced agreement between himself and Standard Pole & Tie Co. The 19,500 ties were shipped to defendant Company. They were mixed with other ties, aggregating 26,000. Plaintiff introduced the deposition of one Walsh, who testified that he had conversation with Wilson, purchasing agent of defendant; that he stated to Wilson he went to see him about payment for his ties—showed him letter of February 29, 1904. Wilson said shipment of poles had not been received; when they were received and inspected he would immediately, or as soon as convenient, forward to O. L. Clark a check for the amount of the lien which was some three thousand dollars plus. That he had a second conversation with Wilson in which he said that the ties had been received but had not been inspected. That as soon as they were inspected he would send Mr. Clark a check for the amount of the lien and there was no need to worry about it. That he did not understand why Mr. Clark was worrying about it. That the Deleware, Lackawanna and Western R. Road Co. had guaranteed the payment to Clark through the agent who negotiated the original delivery of the ties * * * That the Deleware, Lackawanna & Western R. Road Co. had agreed to pay Clark this lien on these ties and that was sufficient to set him at rest.

Defendant introduced G. F. Wilson, who testified that he was purchasing agent for defendant company. He denied

having had any conversation with Walsh; said that he bought ties from Standard Pole & Tie Co. That plaintiff was not known in the transaction, that he was simply to disburse the money for the Standard Pole & Tie Co. That the ties were sold to defendant absolutely. That there were no conditions connected with the sale. Defendant offered to show that the Trustee in Bankruptcy of the Standard Pole & Tie Co. claimed the money and forbade the payment of it to the plaintiff This was ruled out by the Court and defendant excepted. The exception can not be sustained. The testimony was clearly incompetent. The defendant asked the Court to give certain special instructions which were refused. We think that the court properly refused to give the instructions. They involved an instruction to find for the defendant upon all of the testimony and were equivalent to an instruction that the plaintiff was not entitled to recover. His Honor instructed the jury that if they found "That the plaintiff had in his possession or under his control 24,000 cross-ties of the Standard Pole & Tie Co. on the 10th of November, 1903, then this paper, the agreement or contract between plaintiff and Standard Pole and Tie Co. of that date, gave him a valid lien upon those cross-ties as long as he retained them in his possession, at least on 19,500 of them."

"If the cross-ties were not in the possession of the plaintiff, the description in the agreement between him and Standard Pole and Tie Company would not be sufficient to give a valid lien, but if plaintiff had possession he had a valid lien on the cross-ties as long as he kept them in his possession."

"By shipping the cross-ties to Wilmington, N. C., the plaintiff did not lose his lien upon them, if he had a lien."

"If the jury find that the Standard Pole and Tie Co. and plaintiff agreed that the cross-ties should be shipped to the defendant from Wilmington, and that the plaintiff was not to release his lien upon the cross-ties by the shipment by the

plaintiff, by schooner, to the defendant in New Jersey, until the plaintiff was paid the amount the Standard Pole and Tie Co. owed him, or until the defendant guaranteed the payment of the debt of the Standard Pole and Tie Co. to the plaintiff, then the court charges you the shipment from Wilmington, N. C., to the defendant does not lose the plaintiff his lien upon the cross-ties or waive it."

Here the court read the letter of plaintiff to George F. Wilson, purchasing agent, dated February 25, 1904, and the letter of George F. Wilson, purchasing agent, to plaintiff, dated February 29, 1904.

"The court charges the jury that if the plaintiff had a lien upon 19,500 cross-ties, that he reserved the lien by agreement between himself and the Standard Pole and Tie Co., and if the defendant received these cross-ties, and if before the defendant received these cross-ties, the defendant received the letter of the plaintiff dated February 25, 1904, which I have just read, and wrote the letter to plaintiff dated February 29, 1904, which I have just read, then the defendant would be indebted to the plaintiff, and the jury will answer the first issue 'Yes.' "

"The indebtedness of the defendant to plaintiff is $3,-468.47, if you believe the evidence, with interest from the commencement of this action."

"Before the jury can answer the first issue 'Yes,' they must find that the letter of plaintiff to Geo. F. Wilson, of February 25, 1904, was received before the defendant received the cross-ties, and that the letter of Geo. F. Wilson to plaintiff, of February 29, 1904, was written before defendant received the cros-ties."

The defendant excepted to the charge specifying the parts thereof to which exceptions were pointed.

The defendant files seventeen assignments of error based upon exceptions to His Honor's ruling upon the admission of testimony. We have examined each of them. None of

them can be sustained.  The plaintiff simply gave·a history
of the transaction with the Standard Pole and Tie Company
leading up to the correspondence with Wilson, the purchas-
ing agent of the defendant, notifying him of the terms and
conditions upon which the ties were shipped and the prom-
ise by the defendant to send check for the amount as soon
as the ties were received and inspected.  We can see no
possible objection to any portion of this testimony.  De-
fendant proposed to ask Wilson in respect to his purpose in
writing the letter of February 29, 1904.  This was clearly
incompetent.  The letter spoke for itself and it was entirely
immaterial with what purpose he wrote it.  Its construc-
tion, read in the light of plaintiff's letter of February 25th,
and the other testimony, was for the court.  As we have said
the court properly refused its special instructions.  The un-
contradicted testimony of the plaintiff, corroborated by the
letter of Geo. F. Wilson, purchasing agent of the defendant,
shows that the ties were shipped to the defendant, pursuant
to an agreement made with the manager of the Standard
Pole and Tie Company and the plaintiff, that the latter was
to have the possession and right to control the delivery of
them until the purchase price was paid by the defendant,
that defendant was notified of this agreement before receiv-
ing the ties and expressly assented to the terms of such agree-
ment.  The right of the plaintiff is referred to by the par-
ties and so treated by the court as a lien.  It is immaterial
whether this is apt language to express such right.  His
Honor expressly told the jury that the right of the plaintiff
to recover was dependent upon the retention of possession
and continued only so long as he kept such possession.  It
does not very clearly appear but we infer that notwithstand-
ing the agreement the ties were shipped from Wilmington
to defendant in name of the Standard Pole and Tie Co.,
and if the defendant, without notice of the terms of the
agreement, had paid the Standard Pole and Tie Co. for

them the plaintiff would have been without remedy against it. However this may be, as we have said, the plaintiff notified the defendant of his right before the receipt of the ties and it expressly promised to remit the amount due. The defendant certainly has no cause of complaint of the charge. The right of the plaintiff is made to depend upon the finding by the jury that he had a lien, or as we interpret the language in the light of the testimony, the possession and control. We are of the opinion that the plaintiff is entitled to recover upon another view of the case. The letter of February 25th from plaintiff to defendant expressly states that the writer has sold the ties to the Standard Pole and Tie Co. with the understanding that they were not released but put in with others and would be released upon payment of the amount due. He requests the defendant to assent to and carry out this agreement. There is no room for controversy as to the proper construction of this letter. The defendant answers saying, "I am authorized by the Standard Pole and Tie Co. to remit to you on account of shipment made by them * * * On arrival of shipment after inspection was made remittance will be made to you as directed." This makes out a clear case of novation which is thus defined by Mr. Parsons, "A transaction whereby a debtor is discharged from his liability to his original creditor by contracting a new obligation in favor of a new creditor by the order of his original creditor." 1 Parsons on Contract, 217; 9 Cyc. 377. The Standard Pole and Tie Co. owed the plaintiff for the ties. It sells them to the defendant and directs the payment to be made by defendant to plaintiff. This arrangement is assented to by all of the parties, whereby the Standard Co. is released from its liability to the plaintiff and the defendant becomes the debtor. The substitution of one debtor for the other constitutes a consideration for the promise by the defendant. It will be noted that the letter of the defendant of February 29, 1904 states expressly that

it is authorized by the Standard Company to remit to the plaintiff and promises to do so "as directed." This view would entitle the plaintiff to recover without reference to any lien on the poles. We have examined the entire record and find no error in His Honor's rulings. The judgment must be

Affirmed.